[Cite as *State v. Cruz*, 2013-Ohio-1889.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
## No.  98264

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANDRES CRUZ

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-542079

**BEFORE:**   E.A. Gallagher, J., Celebrezze, P.J., E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**   May 9, 2013

**ATTORNEY FOR APPELLANT**

R. Paul Cushion, II
75 Public Square
Suite 1111
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Erica Barnhill
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} Defendant-appellant, Andres Cruz, appeals his conviction received in the Cuyahoga County Court of Common Pleas. Cruz argues that the trial court erred in denying his motion to suppress and in failing to allow him to use a peremptory challenge, that his conviction must be overturned because the arresting officers acted outside of their jurisdiction and that his trial counsel rendered ineffective assistance. Finding no merit to the instant appeal, we affirm the decision of the trial court.

{¶2} In March 2010, Cleveland Police Narcotics Detective, Ralph Valentino, received information from a confidential source that Cruz, along with his codefendants, Flor Arroyo and Alvin Caraballo, were receiving large amounts of narcotics in Cleveland from a national street gang known as the Mexican Mafia. According to the source, the shipments were coming from Columbus, Ohio, to a pizza shop operated by Cruz on the west side of Cleveland. Detective Valentino began his investigation and identified the pizza shop as Pizza Planet located at 4669 West 130th Street. During his investigation, Detective Valentino acted in an undercover capacity, posing as Thomas Vento, a building contractor with a special-needs son.

{¶3} In the early stages of the investigation, Valentino made controlled purchases of 18.64 and 50.42 grams of black tar heroin from Caraballo and Arroyo. Valentino stated that he wanted to arrange the purchase of a large quantity of heroin so he could eventually meet with Cruz, with whom Caraballo and Arroyo appeared to work.

On April 15, 2010, Valentino met with Cruz at his pizza shop and indicated that he was interested in purchasing a "bird," a street term for one kilogram of cocaine. Cruz quoted Valentino the price of $39,000 for the cocaine and noted that it was about 97 percent pure and could be "stepped on" or broken down to double the money. Detective Valentino testified that he and Cruz talked about a future drug transaction with Cruz describing how he wanted the process to go. Cruz wrote down his cellular telephone number, gave it to Valentino and told the detective to call when he was ready to make a purchase.

{¶4} On April 23, 2010, Detective Valentino called Cruz and asked for two ounces of cocaine, which he termed "two small Cuban sandwiches." Cruz stated that it would be no problem and, on April 27, 2010, Cruz and Valentino discussed the purchase. Valentino testified that Cruz quoted him a price of $39,000 for the "big one" and the detective clarified that he wanted two small Cuban sandwiches (ounces), not big ones (kilos). Cruz told Valentino that he would call him back but never did; no drug transaction took place on that day.

{¶5} Valentino testified that from the end of April through the beginning of July, he and Cruz fell out of contact. However, in the beginning of July, Valentino contacted Cruz and told him that he had made arrangements to accept a larger amount of cocaine and that he was prepared financially to receive the drugs. Cruz instructed Valentino to meet him on July 5, 2010, at the boat launch in Fairport Harbor. At that meeting, which officers captured on undercover audio and video, Cruz quoted Valentino a price of

$39,000 for a kilogram of cocaine and $38,000 for a half a kilogram of black tar heroin. Valentino testified that the purchase was to take place the next day.

{¶6} On July 6, 2010, Valentino contacted Cruz via cellular phone and set up the meeting at the Lido Lounge on the west side of Cleveland. Detective Valentino testified that Cruz informed him that the narcotics had not yet arrived and that he was not prepared to go through with the deal. Cruz told Valentino that he would have the narcotics on July 8, 2010, and they agreed to get in touch on that date. He further testified that on July 8, 2010, Cruz informed him via text message that he still did not have the drugs but that when he did he wanted to make the deal outside of Cleveland.

{¶7} After numerous text messages between Cruz and Valentino, the parties set the transaction date for July 15, 2010. Valentino stated that he met Cruz in the parking lot of Houlihans off I-90 on Detroit Road in Westlake, Ohio. After waiting over an hour, Valentino spoke with Cruz who told him to go home and that he would call later that night. Shortly before midnight on July 15, Cruz called Detective Valentino and they scheduled the deal for the following morning. Valentino testified that Cruz suggested conducting the transaction at his house in Litchfield in Medina County, Ohio.

{¶8} Detective Valentino testified that on the morning of July 16, 2010, members of the Cuyahoga County Sheriff's Department, the Cleveland Police Narcotics Unit, and the Medina County Drug Task Force were prepared for a takedown and a search warrant execution at Cruz's residence on 8405 Crow Road in Litchfield. Between 11:00 a.m. and 12 noon, members of the various law enforcement offices met at

a staging location approximately two to three miles from Cruz's residence. Detective Luke Combs of the Cuyahoga County Sheriff's Office secured a search warrant for the 8405 Crow Road property from a Medina County judge. The warrant was directed to "members of the Medina County Sheriff's Office, Sheriff Bob Reid, Cuyahoga County Sheriff, and/or the Cleveland Chief of Police and/or any law enforcement officers as authorized by law." Valentino stated that after the law enforcement teams were in place for the takedown, he placed a call to Cruz stating that he was on his way. Cruz told Valentino to meet him at the intersection of Routes 83 and 82 in Medina County.

{¶9} Shortly after placing the call, Detective Valentino and Detective Michael Engelhart observed three vehicles exiting the driveway of 8405 Crow Road. The first vehicle, later found to contain Flor Arroyo and his girlfriend, turned west out of the driveway where it was stopped on Crow Road by Detectives Valentino and Engelhart. The second and third vehicles, a gold Sebring and a blue Trailblazer, turned east out of the driveway. Detectives Tamika Agnew and Timothy O'Connor stopped the Sebring, which contained codefendants Reuben Quiroz and Garardo Juarez. Detective O'Connor testified that he observed the blue Trailblazer veer off Crow Road and out of sight for a short time. O'Conner stated that when the Trailblazer reappeared on Crow Road, he and Detective Agnew stopped the vehicle and placed occupants Cruz and Caraballo under arrest.

{¶10} Detective Agnew transported Cruz and Caraballo to 8405 Crow Road, and Detective O'Conner investigated the area where the Trailblazer reappeared on Crow

Road. O'Connor observed tire tracks and traced the tracks to 8317 Crow Road. Detective O'Connor and Cuyahoga County Sheriff's Detective Nick Riegelmayer spoke to the residents of 8317 Crow Road. The residents told the officers that the Trailblazer pulled down the driveway and parked near an outbuilding, that the driver got out with a bag, threw something under the outbuilding and then pulled back onto the driveway. The residents gave the officers permission to search the property and the officers recovered a purse under the outbuilding. The purse contained 986 grams of powder cocaine and 372 grams of heroin.

{¶11} Police returned to 8405 Crow Road were the Medina County SWAT team had executed the search warrant. The officers did not recover any additional drugs but did seize 27 guns, miscellaneous ammunition and a digital scale. Valentino testified that after reading Cruz his Miranda warnings, Cruz admitted that he had thrown the drugs under the outbuilding of 8317 Crow Road in an effort to get rid of them. Cruz also told Valentino that he was going to make $10,000 on the deal.

{¶12} On October 7, 2010, the Cuyahoga County Grand Jury returned a 20-count indictment against Cruz, Caraballo, Quiroz, Juarez and Arroyo. The indictment charged Cruz as follows: Counts 7, 9, 10, and 11 charged Cruz with both trafficking and major drug offender specifications; Count 8, trafficking; Count 12, trafficking with a juvenile specification; Count 13, drug possession; Count 14, trafficking with major drug offender and juvenile specifications; Count 15, drug possession with a major drug offender specification; Count 16, possession of criminal tools; Count 19, having weapons under

disability and, Count 20, tampering with evidence. Counts 12 through 16 and 19 all contained forfeiture specifications for a digital scale, $50 in Honduran currency, ammunition and 27 firearms confiscated during the search warrant execution at 8405 Crow Road on July 16, 2010.

{¶13} Cruz filed a motion to suppress his statement to police and to suppress the recovered cocaine and heroin. Cruz argued that the officers were without authority to stop and search the vehicle in which he was traveling prior to the execution of the search warrant and, therefore, any statements and illegal drugs found as a result must be suppressed. The trial court, after a hearing, denied Cruz's motion. On that same day, Cruz executed a jury waiver as to the weapons while under disability charge and the parties selected a jury of 12 plus one alternate. The court excused the remaining members of the venire and swore in the jury. However, before testimony commenced, the court excused juror No. 3 for cause and replaced the juror with the alternate. The court and both parties agreed to attempt to seat another alternate using the jurors who had been released from the original venire. Three of the six excused jurors returned and, after voir dire, the parties selected a new alternate juror who was seated without objection by either party.

{¶14} At the conclusion of trial, the jury found Cruz guilty of trafficking with major drug offender specifications as charged in Counts 7-11; guilty of the trafficking and possession charges on Counts 12 through 15, including the major drug offender specifications, but not guilty of the juvenile or forfeiture specifications; not guilty of

Count 16, possessing criminal tools; and guilty of Count 19, tampering with evidence. The court found Cruz not guilty of having weapons while under disability.

{¶15} At the sentencing hearing, the court merged Counts 12 and 13 and Counts 14 and 15 and the state elected to proceed on Counts 12 and 14. The court sentenced Cruz to 11 years on Counts 7, 9, 10, 11, and 14; five years on Count 8; and 24 months on Count 20. The court ordered Counts 7, 9, and 12 to be served consecutively to each other and that all remaining counts were to be served concurrently for a total prison sentence of 33 years. After Cruz filed a motion for reconsideration, the court conducted an additional sentencing hearing to impose sentence on Count 12. The court imposed a sentence of 11 years on Count 12 and ordered all other terms of the sentence to remain the same.

{¶16} Cruz appeals, raising four assignments of error.

Assignment of Error I

The trial court erred when it ruled that the stop, detention and search of the Appellant's vehicle, and the contemporaneous arrest, detention and search of its occupants was valid, when the vehicle and its occupants had departed from a residence located at 8405 Crow Road, Litchfield Township, Medina County, Ohio, which residence was the subject of a search warrant, but departed from the residence prior to the police acting on the search warrant, and when the police had no probable cause or a warrant to stop, detain or search the vehicle and when the police had no probable cause or warrant for the detention, arrest and search of the vehicle's occupants.

Assignment of Error II

The Cuyahoga County, Ohio Deputy Sheriffs and the City of Cleveland, Ohio Police Officers had no authority to act in the capacity of law enforcement officials in Medina County, Ohio, well outside their jurisdictional and territorial limits when no exigent circumstances existed

and therefore any evidence obtained by these officers while they were acting in the capacity of a law enforcement officer in Medina County, Ohio was illegally and unlawfully obtained, as these officers let all authority and jurisdiction to perform any law enforcement functions in Medina County, Ohio and all illegally obtained evidence they had secured or authored must be suppressed.

## Assignment of Error III

The trial court erred by not declaring a mistrial in the Appellant's case, when a juror that had been sworn in as a member of the Appellant's chosen jury, decided that she could not serve on this jury and the trial court thereafter excused her for cause, and when the remaining jurors that originally were in the group of six (6) remaining potential jurors, subject to selection in the Appellant's case, were previously discharged by the trial court and the jury commission, and who had physically left the Cuyahoga County, Ohio Justice Center, but then were called back into the jury pool, and when the alternate juror thereafter seated had not received any cautionary instructions to ensure that she would not "poison the well," and, when no inquiry by the trial court was made as her activities after leaving the justice center, and when the appellant was never given the opportunity to utilize a peremptory challenge as to this alternate juror, which thereby deprived the Appellant of his Sixth Amendment right to a fair and impartial jury.

## Assignment of Error IV

When the appellant was initially approached and affirmatively solicited by an undercover police officer on sixteen (16) occasions, over a four (4) month period, to sell the undercover police officer illegal drugs, and when the appellant refused to sell any drugs during those sixteen (16) occasions when the undercover police officer affirmatively solicited the appellant for the sale of illegal drugs and when the undercover police officer offered payment for those drugs in an amount which clearly exceeded the street value of those drugs, satisfying the use of entrapment as a defense, when counsel for the appellant wholly failed to even raise this obvious defense, amounted to the ineffective assistance of counsel and thereby deprived the appellant of his Sixth Amendment right to effective assistance of counsel.

{¶17} In *State v. Pretzak*, 8th Dist. No. 91244, 2009-Ohio-621, this court outlined

the standard of review on a motion to suppress.

Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. *See State v. Winand,* 116 Ohio App.3d 286, 688 N.E.2d 9 (1996), citing *City of Tallmadge v. McCoy*, 96 Ohio App.3d 604, 645 N.E.2d 802 (1994). * * * This is the appropriate standard because "in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses."

*State v. Hopfer*, 112 Ohio App.3d 521, 679 N.E.2d 321 (2d Dist.1996).

{¶18} However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard." *See also State v. Lloyd*, 126 Ohio App.3d 95, 709 N.E.2d 913 (7th Dist.1998).

{¶19} In his first assigned error, Cruz argues that the officers were without any authority to stop and search the Trailblazer in which he was riding. Cruz states that the officers' stop and search of his vehicle was outside the scope of the authorized search warrant. As such, Cruz seeks the suppression of the heroin and cocaine recovered from underneath the outbuilding at 8317 Crow Road, his statements made to Valentino after his arrest, and evidence seized during the execution of a search warrant of 8405 Crow Road. We agree, in part, with Cruz's argument.

{¶20} In the present case, the officers recovered the cocaine and heroin from 8317 Crow Road, where Cruz had abandoned it during his attempted flight from the arresting officers. Detective O'Conner testified that he retraced the Trailblazer's route using the tire marks to discover the abandoned purse containing the drugs. Thus, the appellant abandoned the property. As such, he cannot now attempt to assert a possessory interest

in the property.  *State v. Thomas*, 8th Dist. No. 79565, 2002-Ohio-1085.   As stated by

this court in *Thomas*,

> [a] voluntary abandonment of property deprives a defendant of standing to
> challenge a subsequent seizure of said property.  *State v. Freeman*, 64
> Ohio St.2d 291, 297-298, 414 N.E.2d 1044 (1980).   "Abandonment is
> primarily a question of intent, and intent may be inferred from words
> spoken, acts done, and other objective facts.  *United States v. Cowan*
> (C.A.2, 1968), 396 F.2d 83, 87.   All relevant circumstances existing at the
> time of the alleged abandonment should be considered.  *United States v.
> Manning* (C.A.5, 1971), 440 F.2d 1105, 1111.   The issue is not
> abandonment in the strict property-right sense, but whether the person
> prejudiced by the search had voluntarily discarded, left behind, or
> otherwise relinquished his interest in the property in question so that he
> could no longer retain a reasonable expectation of privacy with regard to it
> at the time of the search.  *United States v. Edwards*, 441 F.2d 749, 753;
> *Compare Katz v. United States*, 1967, 389 U.S. 347, 19 L.Ed. 2d 576, 88
> S.Ct. 507 * * *."

{¶21} From the testimony and evidence adduced at trial, it is clear that Cruz

abandoned the cocaine and heroin.   After driving away from 8405 Crow Road, Cruz

drove onto the property of 8317 Crow Road and threw a purse containing the cocaine and

heroin under an outbuilding located on the property.   The drugs in question constituted

abandoned property and are not subject to any Fourth Amendment considerations.

*Thomas*.

{¶22} After the officers stopped the vehicle, Cruz made a statement to Valentino

implicating himself in the crime.   Although Cruz's statement to Detective Valentino

was made after Valentino advised Cruz of his *Miranda* warnings, we must suppress this

statement based on the recent United States Supreme Court case of *Bailey v. United*

*States,* 568 U.S. ___, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013).   In *Bailey*, the court held

that detentions incident to the execution of a search warrant are reasonable at the scene of the search but not at a later time in a remote place under the Fourth Amendment.

{¶23} In *Bailey*, as in this case, law enforcement officers were preparing for the execution of a search warrant and, while conducting surveillance of the premises prior to the search, observed males enter an automobile parked in the driveway and leave the scene. Officers followed the auto, stopped it and ordered the occupants from the car. The officers secured the occupants and found keys on the person of Mr. Bailey, which were later determined to unlock the apartment where, pursuant to the search warrant, drugs and a gun were found.

{¶24} The court in *Bailey* distinguished that matter from *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed. 2d 340 (1981), which held that a warrant to search founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises where the search is being conducted. Summers was descending the front steps of the home when police arrived. Because it was lawful to require Summers to reenter and to remain in the house until evidence establishing probable cause to arrest him was found, the court found that his arrest and a search incident thereto were constitutionally permissible. *Id.*

{¶25} In *Bailey*, the court held that:

> The risk that a departing occupant might notice the police surveillance and alert others still inside the residence is also an insufficient safety rationale to justify expanding the existing categorical authority to detain so that it extends beyond the immediate vicinity of the premises to be searched. If extended in this way the rationale would justify detaining anyone in the neighborhood who could alert occupants that the police are outside, all

without individualized suspicion of criminal activity or connection to the residence to be searched. This possibility demonstrates why it is necessary to confine the *Summers* rule to those who are present when and where the search is being conducted.

{¶26} In the case now at bar, appellant was detained and arrested a substantial distance from the property to be searched. His detention and arrest, then, are impermissible under *Bailey* and any statements made by Cruz subsequent to his arrest must be suppressed.

{¶27} Irrespective of the suppression of the statements, however, there is sufficient evidence to support the convictions of Cruz.

{¶28} Lastly, Cruz seeks the suppression of the evidence recovered at 8405 Crow Road. Cruz does not argue that the warrant was obtained illegally. He claims that because the officers erroneously executed a stop and search of the three vehicles prior to executing the search warrant at 8405 Crow Road, all evidence seized must be suppressed. We find no merit to Cruz's argument. Regardless of the officers' stops of the vehicles prior to the execution of the warrant, there was no error with the officers' search of 8405 Crow Road. As such, the court was correct in denying Cruz's motion to suppress.

{¶29} We therefore sustain in part and overrule in part, Cruz's first assignment of error.

{¶30} In his second assigned error, Cruz argues that the Cuyahoga County police officers were outside of their jurisdictional and territorial limits when they placed Cruz under arrest and, therefore, all evidence was illegally obtained and must be suppressed. This assignment of error lacks merit.

**{¶31}** Generally, a police officer may not execute a search warrant outside his territorial jurisdiction. *State v. Miller*, 9th Dist. No. 12198, 1986 Ohio App. LEXIS 5412 (Jan. 22, 1986).

> Instead, the legislature has intended that the search warrant be executed by police officers in the area of their respective territorial jurisdiction by indicating that warrant shall be directed to a proper officer R.C. 2933.24. However, the fact that officers from another jurisdiction participated in a search does not invalidate the search if an officer of the jurisdiction in which the warrant is executed accompanies the other officers and remains present at all times.

*Id.* If such an officer is present, it is immaterial whether officers unauthorized to execute the warrant were present and helped in the search. *Id.*

**{¶32}** In the present case, the search warrant for 8405 Crow Road was issued to "members of the Medina County Sheriff's Office, Sheriff Bob Reid, Cuyahoga County Sheriff, and/or the Cleveland Chief of Police and/or any law enforcement officers as authorized by law." The testimony revealed that members of the Cuyahoga County Sheriff's Office and the Cleveland Police Department were accompanied by numerous Medina County officers, who were authorized to execute a search warrant pursuant to Crim.R. 41(A).

**{¶33}** Cruz's second assignment of error is overruled.

**{¶34}** In his third assigned error, Cruz argues that the court erred when it recalled a previously dismissed juror to sit as an alternate juror for his trial. Cruz claims that this alternate juror was given no cautionary instructions and, therefore, he should have been given the opportunity to utilize a peremptory challenge. This argument lacks merit.

{¶35} As it relates to this assigned error, Cruz has waived all but plain error. In order to prevail on a plain error analysis, Cruz bears the burden of demonstrating that the outcome of trial clearly would have been different but for the error. *State v. Long*, 52 Ohio St.2d 91, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id.

{¶36} Cruz did not object to the court's plan to attempt to seat an alternate juror from the remaining original, and then released, venire. Further, when asked specifically by the court if he objected to proceeding in that manner, Cruz's counsel stated that he did not object. Cruz fails to demonstrate how any of the alleged errors in seating the alternate juror could possibly have affected the outcome of the trial. In particular, at the conclusion of the case, the trial court excused the alternate juror and the juror did not participate in the deliberation process. Given that the alternate juror did not deliberate or vote on the ultimate outcome of the case, it is inconceivable that any irregularities in that juror's selection affected any of Cruz's fundamental rights. We thus decline to find plain error in this case.

{¶37} Cruz's third assignment of error is overruled.

{¶38} In his fourth assigned error, Cruz argues that his trial counsel rendered ineffective assistance when counsel failed to raise the affirmative defense of entrapment. We disagree.

{¶39} The standard for determining whether a trial attorney rendered ineffective

assistance requires appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under the Sixth Amendment, and (2) that the deficient performance prejudiced appellant's defense. *Strickland v. Washington*, 466 U.S. 668, 686-687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Furthermore, in reviewing a claim of ineffective assistance of counsel, a reviewing court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988); *State v. Ellison*, 6th Dist. No. L-02-1292, 2003-Ohio-6748.

{¶40} In *Ellison*, the Sixth Appellate District outlined the defense of entrapment as follows:

> The defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute. Entrapment is an affirmative defense under R.C. 2901.05(C)(2). Entrapment is a "confession and avoidance" defense in which the defendant admits committing the acts charged, but claims that the criminal design arose with the state's agent. The primary consideration in any determination of entrapment is the defendant's predisposition to commit the crime. When the defendant is ready and willing to break the law, the fact that a government agent provides what appears to be a favorable opportunity to do so is not entrapment as a matter of law. A defendant has the burden of proving entrapment by a preponderance of the evidence. (Citations omitted.)

{¶41} Ohio courts use a subjective test to determine whether a defendant was predisposed to commit a crime. *State v. Doran*, 5 Ohio St.3d 187, 192 N.E.2d 1295

(1983). To assist in determining predisposition, the *Doran* court advanced a nonexclusive list of relevant factors:

> (1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity. *Id.* at 192.

**{¶42}** In the present case, we conclude that Cruz's trial counsel did not render ineffective assistance because, even if it was error to fail to raise the affirmative defense of entrapment, which we decline to find, the result of the proceeding would not have been different. Based on the nonexclusive list of factors provided in *Doran*, Cruz was not entrapped by Detective Valentino to sell narcotics.

**{¶43}** Detective Valentino received a tip from a confidential informant about Cruz, Arroyo and Caraballo selling drugs out of a pizza shop on Cleveland's west side. While operating undercover, Detective Valentino was able to purchase drugs from Arroyo and Caraballo, who then introduced the detective to Cruz. Over the next several weeks, Cruz voluntarily engaged in conversations with Detective Valentino about selling the detective a large amount of cocaine and heroin. Cruz spoke knowingly about when the drugs would be available, how he normally fronts drugs to his dealers, and his willingness to sell drugs to Detective Valentino. Although Cruz and Detective Valentino spoke multiple times before any drug transaction took place, this court does not find that unusual given the weight and volume of the drugs Detective Valentino sought to purchase.

**{¶44}** It is readily apparent that Cruz was not an innocent person induced to commit a crime by the Cleveland Police Department. As such, an entrapment defense would not have been successful and his trial counsel did not render ineffective assistance in failing to raise the defense.

**{¶45}** Cruz's fourth and final assignment of error is overruled.

**{¶46}** The judgment of conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. The case is remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
EILEEN A. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., CONCURS IN
JUDGMENT ONLY WITH THE MAJORITY OPINION
AND CONCURS WITH THE SEPARATE OPINION
CONCURRING IN JUDGMENT ONLY.

EILEEN T. GALLAGHER, J., CONCURS IN
JUDGMENT ONLY

EILEEN T. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

**{¶47}** I concur in the majority's judgment affirming Cruz's convictions. However, I do not agree with the majority's application of *Bailey v. United States*, 568 U.S.\_\_\_\_\_, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013), to the facts of this case. The majority concluded that the trial court should have suppressed statements Cruz made to Detective Valentino following his arrest because his arrest was illegal. They determined that Cruz's arrest was unlawful under *Bailey* because he was arrested "a substantial distance" away from the search warrant location.

**{¶48}** In *Bailey*, the United States Supreme Court held that the stop and search of a suspect seen leaving a building that was the subject of a search warrant violated the Fourth Amendment because he was not detained in "the immediate vicinity of the premises in question." *Id.* at syllabus. The suspect was stopped nearly a mile away from the scene of the search.

**{¶49}** As the majority states, the court in *Bailey* distinguished that case from *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), in which the court upheld the search and seizure of a suspect who was stopped outside a house that was the subject of a search warrant. In *Summers*, the court established a category of cases in which detention is permitted without probable cause to arrest for a crime. It allows officers executing a search warrant "'to detain the occupants of the premises while a proper search is conducted.'" *Bailey*, 568 U.S. \_\_\_, 133 S.Ct. 1031, 185 L.Ed.2d 19, quoting *Summers*, 452 U.S. at 705. The rule in *Summers* does not require

law enforcement to have a particular suspicion that the detained individual is involved in criminal activity or poses a specific danger to the officers. *Id.*

{¶50} I do not think the exception to the warrant requirement established in *Summers* and at issue in *Bailey* applies in this case where police had reasonable suspicion to stop Cruz under *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[1] Under *Terry*, an officer is permitted to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting *Terry* at 30.

{¶51} Although a detention under *Terry* may last no longer than is necessary to resolve the issue that led to the stop, *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984), an officer may expand the scope of the stop and continue to detain a suspect without running afoul of the Fourth Amendment if the officer learns additional facts that give rise to a reasonable suspicion that additional criminal activity is afoot. *State v. Robinette*, 80 Ohio St.3d 234, 240, 1997-Ohio-343, 685 N.E.2d 762.

{¶52} Here, Detective Valentino, acting under cover as "Thomas Vento," arranged to buy a kilogram of cocaine and half a kilogram of black tar heroin from Cruz at his residence located at 8405 Crow Road in Litchfield, Ohio. Members of the Cuyahoga County Sheriff's Department, Cleveland Police Department, and the Medina

---

[1] In *Bailey,* the Supreme Court did not include a *Terry* analysis because the court of appeals found Bailey's detention was justified under *Summers* and did not address the validity of the stop under *Terry*.

County SWAT team were prepared for the takedown and search of Cruz's residence before the arranged drug transaction was scheduled to take place.

{¶53} Shortly after Detective Valentino called Cruz to inform him that he was on his way, the detectives observed three vehicles exiting the driveway at 8405 Crow Road. They watched Cruz exit his driveway, disappear into the neighbor's backyard, and reappear moments later. All three vehicles were stopped within minutes. The police had reasonable suspicion to stop Cruz because they reasonably believed he was preparing to sell a large quantity of cocaine and heroin. Cruz's disappearance into the neighbor's backyard was also suspicious and indicated that he was attempting to dispose of the evidence listed in the search warrant.

{¶54} The various law enforcement teams searched the residence at 8405 Crow Road and the neighbor's backyard while the suspects were detained. The detentions did not exceed the time needed to investigate the reasonable suspicions of criminal activity.

{¶55} Therefore, I believe neither *Bailey v. United States* nor *Michigan v. Summers* apply to the facts before us. For that reason, I respectfully concur in judgment only.